UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

KENNETH WAYNE SCOTT,

      Petitioner,

v.                                                                Case No. 5:17cv234-MCR-HTC

MARK S. INCH,[1]

      Respondent.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Kenneth Wayne Scott's ("Scott") petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the Petition and the State's response (ECF Doc. 20) and allowing Scott an opportunity

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Mark S. Inch as the Respondent.

to submit a reply[2], the undersigned recommends the Petition be **DENIED** without an evidentiary hearing.

Scott's petition is premised on three grounds: (1) the State committed a *Brad*y[3] violation by failing to disclose, prior to and during Scott's trial, the State's investigation of drug theft and evidence tampering by Joseph Graves ("Graves"), a Florida Department of Law Enforcement ("FDLE") analyst and supervisor; (2) the trial court violated Scott's due process rights in denying his motion for a new trial based on newly discovered evidence, namely, Graves' arrest; and (3) defense counsel was ineffective for failing to file a motion to suppress evidence obtained pursuant to a search warrant supported by an affidavit from Sgt. Kenny Brock ("Sgt. Brock"), which allegedly contained false or inaccurate information. ECF Doc. 1. For the reasons set forth below, the undersigned finds that the state court's adjudication of these same claims was not contrary to clearly established federal law or based on an unreasonable application of the facts to the law. *See* 28 U.S.C. § 2254(d).

---

[2] The Court allowed Petitioner thirty (30) days to submit a reply, but Petitioner did not file a reply. ECF Doc. 21.

[3] *Brady v. Maryland*, 373 U.S. 83 (1963).

Case No.5:17cv234-MCR-HTC

## I.    BACKGROUND

### A.    The Search Warrant

On September 7, 2012, Sgt. Brock, of the Washington County Sheriff's Office, submitted to County Judge Colby Peele an affidavit for a warrant to search Scott's property.  ECF Doc. 20-5 at 60-61.  In the affidavit, Sgt. Brock stated that at around noon on September 7, 2012, the Probation & Parole Office in Chipley, Florida, contacted Sgt. Brock and "advised that he had a probationer that provided some information concerning a citizen of Washington County that was engaged in illegal activity."  *Id.* at 61.  Sgt. Brock visited the probationer and learned that the probationer's ex-girlfriend, Lisa Johnson ("Johnson"), had information regarding Scott.  *Id.*  Because the information from the probationer was second hand, Brock contacted Johnson at 1:32 p.m. on the same day, and Johnson told him that she had visited Scott at his home on September 6th, observed he had ½ gram of methamphetamine and smoked methamphetamine with him during the visit.  *Id.*  She further told Sgt. Brock that Scott showed her multiple types of pornography on his desktop computer.  *Id.*  Johnson told Sgt. Brock that after she left, she received text messages from Scott asking her whether she was interested in child pornography and showed the messages to Sgt. Brock.  *Id.*  Johnson also stated that she could tell that

the pornographic materials were located on Scott's computer, not online. ECF Doc. 20-5 at 61.

In the affidavit, Sgt. Brock also recounted additional information he, Investigator Jeremy Pelfrey and Special Agent Langley obtained from Johnson, including several visits Johnson had with Scott at his property and her observations, and use of, methamphetamines during those visits. *Id.* at 63. Johnson advised that during one of those visits, which took place on August 24, 2012, she smoked methamphetamine with Scott and two others, one of whom she identified as Stephanie Bassham. *Id.* On that occasion she also observed a ½ gram of methamphetamine inside the trailer and the presence of a methamphetamine lab. *Id.* Additionally, Johnson advised that Bassham was also in the process of moving out and was driving a white minivan. ECF Doc. 20-5 at 63. On August 31, 2012, Brock and Inv. Pelfrey observed a white female loading boxes into a minivan at Scott's residence while conducting surveillance. *Id.*

Sgt. Brock next described information he obtained from another confidential informant who had advised that he had been in Scott's residence and had observed Scott using the computer to sell methamphetamines, including through the social media platform Facebook. *Id.* at 64. Brock confirmed that Scott had communicated with Johnson from his computer and that Scott had a Facebook account, containing

a current photo of Scott.  *Id.*  Sgt. Brock concluded the affidavit with a description

of a controlled buy set up between Johnson and Scott on September 7, 2012, for

which Johnson was give two (2) twenty-dollar bills.  *Id.*

### B.    The Search of Scott's Property and Scott's Statements

A search warrant was signed by Judge Peele on September 7, 2012, and a

search was conducted in the early morning hours of September 8, 2012.  ECF Doc.

20-2 at 75 (Jury Trial Trans. at 186).    During the search, authorities found drug

paraphernalia and 741.9 grams of methamphetamine, (ECF Doc. 20-5 at 90) (Jury

Trial Trans. at 85), 416.5 grams of which was found in an okra jar in a toolbox to

which Scott voluntarily led agents during the search.  *Id.* at 84 (Jury Trial Trans. at

78-9).    No child pornography was ever reported to have been found on Scott's

computer.  *See* ECF Doc. 1 at 12 (claiming that "[n]otably, at no time was there any

evidence retrieved from Petitioner Scott's home or computers depicting the alleged

child pornography").

After the search, Scott signed a *Miranda* waiver and gave a recorded statement

(which was played for the jury at trial).  ECF Doc. 20-2 at 88-115 (Jury Trial Trans.

at 199-228).    In the statement, Scott admitted the bottles in the gray toolbox,

containing 416.5 grams of a mixture containing methamphetamine, were his.  *Id.* at

93-94 (Jury Trial Trans. at 206-07).    He then described his process for making

methamphetamine, how long he had been doing so, and the frequency that he made it. *Id.* at 94-100 (Jury Trial Trans. at 207-12). He also stated his father and the two females who were in the trailer at the time of the search were not involved. *Id.* at 108-11 (Jury Trial Trans. 221-23).

### C.    Procedural History

On September 28, 2012, an Information was filed in the Circuit Court of the Fourteenth Judicial Circuit of Florida in Washington County in Case No. 672012CF00300A, charging Scott as follows: Count I - Trafficking in Amphetamine (200 Grams or More); Count II - Possession of Controlled Substance with Intent to Sell or Distribute; and Count III - Possession of Paraphernalia. ECF Doc. 20-1 at 23. Scott was not charged with any kind of child pornography offense.

Scott pled not guilty. *Id.* at 25. During discovery, Scott's counsel sent a letter to the Assistant State Attorney seeking a copy of the video of Johnson making the buy from Scott. ECF Doc. 1-1 at 23 (Appendix to Petition). The Assistant State Attorney responded that, "Per Jeremy Pelfrey, WCSO, this video cannot be recorded onto a CD/DVD but may be viewed at his office upon request." *Id.* at 25.

Scott's trial began on September 23, 2013. ECF Doc. 20-1 at 164. At his trial, FDLE analyst Samuel Catalani ("Catalani") testified about the substances found at Scott's property during the search. ECF Doc. 20-1 at 288 (Jury Trial Trans.

at 74).  Catalani testified he worked in the drug chemistry section of the FDLE lab in Pensacola, Florida, and personally performed the analysis of the evidence in Scott's case "for the presence or absence of any controlled substances." *Id.*  Further, he testified that he personally conducted gas chromatograph and mass spectrometer tests on the evidence submitted and (1) that each substance submitted was a liquid, not a pill, and (2) that eleven of them tested positive for the presence of methamphetamine.  *Id.* at 291-99.  As noted above, Catalani testified the total amount of substances containing methamphetamine was 741.9 grams.  *Id.* at 299.

In addition to Catalani's testimony, the State offered evidence and testimony relating to the search and Scott's post-*Miranda* statements.  *See* ECF Doc.  20-2 at 74.  The officers who conducted the search testified, and Scott's recorded statement was played for the jury.  ECF Doc.  20-2 at 88-115.  The State did not introduce (1) testimony from Johnson or the other confidential informant; (2) testimony about the controlled buy; or (3) the video and audio recording of the controlled buy.  However, the State entered as an exhibit a photograph of a twenty-dollar bill found in Scott's possession during the search – the same bill that was given to Johnson for the controlled buy.  ECF Doc. 20-5 at 64; ECF Doc. 20-4 at 30.

On September 25, 2013, Scott was found guilty as charged in Count I; guilty of the lesser included offense of Possession of Methamphetamine in Count II; and

guilty as charged in Count III.  ECF Doc. 20-5 at 60-61.  On November 6, 2013,

Scott was adjudicated guilty on Counts I and III and sentenced as follows: Count I -

15 years in prison (which was the mandatory minimum), with credit for 425 days

previously served, (ECF Doc. 20-1 at 81); Count III - time served (425 days).  ECF

Doc. 20 at 2.  The trial court granted Scott's Motion to Set Aside Verdict in Count II

on double jeopardy grounds.  ECF Doc. 20-1 at 142.  The trial court also accepted

Scott's plea of no contest to sale of methamphetamine in a related case, No. 12-301,

adjudicated him guilty of that charge, and sentenced him to time-served.  ECF Doc.

20-1 at 143-44.

On November 21, 2013, Scott appealed his judgments and sentences in Cases

12-300CF and 12-301CF to the First District Court of Appeal.  ECF Doc. 20-1 at 93

(Ex. B1 at 75).  The First District Court *per curiam* affirmed the sentences without

written opinion on January 9, 2015, in Case No. 1D13-5938.  *Scott v. State*, 156 So.

3d 1083 (Fla. 1st DCA 2015).  The Court's mandate issued February 4, 2015.  ECF

Doc. 20-4 at 104 (Ex. B11).  On or about May 19, 2015, Scott filed a Motion for

Mitigation, Reduction or Modification of Sentence in the trial court, which was summarily denied on June 3, 2015. ECF Doc. 20-4 at 116 (Ex. C1 at 9-10).

On August 4, 2015,[4] Scott filed a pro se Motion for Postconviction Relief under Fed. R. Crim. P. 3.850 in the state circuit court, alleging seven grounds for relief, three of which mirror the claims asserted in this petition. ECF Doc. 20-4 at 144-80 (Ex. C1 at 38-74). The state court issued an 11-page order denying relief as to all seven claims on June 28, 2016. ECF Doc. 20-5 at 194 to 204 (Ex. C1 at 281-91). Scott appealed the court's denial to the First DCA (ECF Doc. 20-6 at 13 (Ex. C1 at 450)), which *per curiam* affirmed the postconviction order without written opinion on March 21, 2017. *Scott v. State*, 224 So. 3d 216 (Fla. 1st DCA 2017); ECF Doc. 20-6 at 20 (Ex. C2). The court's mandate issued April 18, 2017. *Id.* at 22 (Ex. C3). Scott filed the instant case on September 7, 2017. (Ex. D). As the Respondent states in his brief, only 244 un-tolled days elapsed from the date Petitioner's judgment became final (on April 9, 2015) until he filed his Petition for Writ of Habeas Corpus (on September 7, 2017). ECF Doc. 20 at 5. Thus, the petition is timely.

---

[4] *See Houston v. Lack*, 487 U.S. 266, 275-76 (1988) (Under the "prison mailbox rule," a *pro se* prisoner's court filing is deemed filed on the date it is delivered to prison authorities for mailing.).

**E.    Drug Theft and Evidence Tampering by Joseph Graves**

On February 4, 2014 (after Scott's conviction and direct appeal), FDLE analyst and supervisor Graves was arrested.[5]  ECF Doc. 20-5 at 235-37.  According to the arrest affidavit, in late January 2014, employees of FDLE identified discrepancies with drug evidence in several 2013 cases.  ECF Doc. 20-5 at 238-49. Specifically, in each instance someone had replaced drug evidence of opiates or benzodiazepines with over-the-counter drugs, drugs from other cases, or removed drug evidence.  *Id.*  In each instance, Graves had conducted the testing and signed the test results.  *Id.*  In each instance, the drugs at issue were in pill form.  *Id.*

**II.    Legal Analysis**

**A.    Federal review of state court decision**

Under the standard of review for a § 2254 motion, this Court is precluded from granting a habeas petition on these claims unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an

---

[5] On May 27, 2014, Scott filed a motion seeking to have the appellate court relinquish jurisdiction over his direct appeal for the purpose of have the trial court consider a post-conviction motion on the grounds of newly discovered evidence or *Brady* violation relating to Graves's arrest, but that motion was subsequently withdrawn.  ECF Doc. 20-5 at 195.

unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000). *See id.*, at 412-13 (O'Connor, J., concurring). Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010). Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the [] case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring).

## B.    Grounds One and Two

Grounds One and Two both involve the illicit activities and arrest of Laboratory Analyst Supervisor Graves, ECF Doc. 20-5 at 195 (Order Denying Motion for Post-Conviction Relief at 2). In Ground One, Scott argues the State

committed a *Brady* violation by failing to disclose Graves's wrongful conduct during his trial. ECF Doc. 1 at 4. In Ground Two, Scott argues the trial court erred in denying his motion for newly discovered evidence, namely, Graves's arrest. Id. at 8.

### 1. The State Court's Decision on Ground One

The state judge denied Scott relief on Ground One, finding that under *Brady v. Maryland*, 373 U.S. 83 (1963), and *Strickler v. Greene,* 527 U.S. 263 (1999), evidence of Graves's wrongful conduct was not evidence that "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict…." ECF Doc. 20-5 at 197, (citing *Wright v. State*, 857 So.2d 861, 869-70 (Fla. 2003)). The undersigned agrees.

As noted by the state judge, the Supreme Court in *Strickler* held that a defendant "must convince us that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." *Strickler*, 527 U.S. at 289–90. *Strickler* stressed that "[t]he question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." *Id.* (citing *Kyles v. Whitley*, 514 U.S. 419, 434 (1995)). Here, no such reasonable probability exists

where (1) Graves did not analyze the evidence obtained from the search warrant on Scott's property and (2) the drug evidence obtained from Scott's property did not involve pills. *Compare Beazley v. State,* 148 So. 3d 552, 555 (Fla. 1st DCA 2014) (the appellate court relinquished jurisdiction so the trial court could consider a motion for post-conviction relief because "Joseph Graves, the FDLE analyst who testified at Beasley's trial as to the nature of the pills abandoned by Beasley, was arrested for trafficking of controlled substances taken from an FDLE laboratory) *with Kennelly v. Sec'y. Dep't. of Corr.,* 2018 WL 4695254 at *3 (N.D. Fla. Aug. 24, 2018), *report and recommendation adopted*, 2018 WL 4658685 (N.D. Fla. Sept. 27, 2018) (denying relief because "there is no evidence that Mr. Graves was involved in Petitioner's case (in a supervisory role or otherwise), and the state-court record reveals that a different individual was the analyst regarding the evidence in Petitioner's case").

Moreover, Scott gave a recorded statement admitting he produced and distributed methamphetamine. ECF Doc. 20-2 at 88-115 (Jury Trial Trans. at 199-228). In the statement, he admitted the bottles in the gray toolbox, containing 416.5 grams of a mixture containing methamphetamine, were his. Id. at 93-94. He then described his process for making methamphetamine, how long he had been doing so, and the frequency that he made it. Id. at 94-100. He also stated that his father

and the two females who were in the trailer at the time of the search were not involved. *Id.* at 108-11. Thus, the evidence of Graves's conduct is not sufficient to "convince [the Court] that 'there is a reasonable probability' that the result of the trial would have been different if the suppressed [evidence] had been disclosed to the defense." *See Strickler*, 527 U.S. at 289–90.

Furthermore, nothing in the record indicates the State was aware of Graves's illicit behavior until January 21, 2014, *see* ECF Doc. 20-5 at 38-49, and Scott was adjudicated guilty three months earlier, on November 6, 2013. ECF Doc. 20-1 at 81. This is also fatal to Scott's *Brady* claim in Ground One. Scott cannot show that the evidence was "suppressed by the State, either willfully or inadvertently" – which is required under *Brady* and *Strickler* – because the state simply did not know about the evidence until after Scott's trial and sentencing were completed. *See Strickler*, 527 U.S. at 280-81. For this reason and the reasons given by the state court, the state court's denial of relief on Ground One was not an unreasonable application of federal law.

### 2.    The State Court's Decision on Ground Two

The state judge did not explain his reasons for denying relief on Ground Two. Thus, for Scott to prevail on Ground Two, he must show that "there was no reasonable basis for the state court to deny relief" on the federal due process claims

raised in Ground Two. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1195 (2018) (explaining that under *Harrington v. Richter*, 562 U.S. 86 (2011), "where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief"). Where the petitioner claims the state court deprived him of his rights to due process, the petitioner must show that the error "was of such magnitude as to deny fundamental fairness to the criminal trial...."' *Alderman v. Zant*, 22 F.3d 1541, 1555 (11th Cir. 1994) (quoting *Osborne v. Wainwright*, 720 F.2d 1237, 1238 (11th Cir.1983)). For the same reasons supporting the state court's decision as to Ground One, Scott's claims do not rise to "such a magnitude as to constitute a denial of 'fundamental fairness.'" *Bryson v. Alabama*, 634 F.2d 862, 864–65 (5th Cir. Unit B Jan. 1981).[6] Thus, Scott is not entitled to relief on Ground Two.

## C.    Ground Three

In Ground Three, Scott argues that his rights under the 4th, 5th, 6th, and 14th Amendments of the United States Constitution were violated because his trial counsel was ineffective for not filing "a motion to suppress evidence obtained by a

---

[6] Decisions by the former Fifth Circuit issued before October 1, 1981, are binding as precedent in the Eleventh Circuit. *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

search warrant containing falsified statements by Sergeant Kenny Brock."   ECF
Doc. 1 at 11.  First, Scott alleges that "Sgt. Brock stated under oath that the 'entire
transaction (controlled purchase) was recorded with a video and audio recording
device'" but that "Sgt. Brock never produced any recording of the transaction to the
defense even after repeated attempts by trial counsel to retrieve the recorded
transaction."   *Id.* at 11-12.   Next, Scott claims that despite the search warrant
affidavit, including a statement by Johnson that child pornography was on Scott's
computer, none was ever retrieved from his home or computer.   *Id.* at 12.   Third,
Scott claims that Sgt. Brock stated that "he received a tip from Mr. Lykins on
September 7, 2012" and that it was that tip that "triggered the necessity for the search
warrant."   *Id.*   However, Scott notes that Sgt. Brock later stated that Investigator
Jeremy Pelfrey was already conducting surveillance on Scott on August 31, 2012.
*Id.*   Scott called this "unexplainable" because "had the information that led Sgt.
Brock to Petitioner Scott come to his attention on September 7, 2012; there is no
explanation for Mr. Pelfrey to be investigating Petitioner Scott's home a full eight
days prior to receiving that information from Mr. Lykins."   *Id.* at 12-13.  Scott also
called into question the information in the affidavit about Johnson's visits to Scott's
home on September 1st and 5th, which were before the September 7, 2012, tip to Sgt.

Brock.  *Id.* at 13.  Scott, thus, concludes that "Sgt. Brock used this information to procure the warrant even though he knew it was false."  *Id.*

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted; *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different.  *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.  *Id.* at 689.  The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy.  *Id.* at 688–89

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693.  The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  Bare allegations that the

petitioner was prejudiced by counsel's performance are not enough. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir.1987).

Specifically, the Eleventh Circuit instructs that whether a petitioner was prejudiced under *Strickland* by counsel's failure to file a motion to suppress involves two questions: "First, was there a meritorious Fourth Amendment claim that necessitated the filing of such a motion? Second, if there was a valid Fourth Amendment claim that counsel should have raised in a motion to suppress, was the evidence that should have been excluded at trial so critical that, but for counsel's failure to file the suppression motion, there is a reasonable probability that the verdict would have been different?" *Huynh v. King*, 95 F.3d 1052, 1058 (11th Cir. 1996), corrected (Nov. 27, 1996).

Here, the state judge correctly determined that any motion to suppress would have been futile because Scott had no meritorious Fourth Amendment claim. The state judge was correct that "even if no child pornography was ultimately located, that does not mean that Sgt. Brock 'falsified' his affidavit when he stated that the informant had told him that she saw child pornography." ECF Doc. 20-5 at 199. With regard to the timing of Investigator Pelfrey's surveillance, the state judge correctly determined that

> Sgt. Brock did not state either that he was conducting an investigation before September 7 or that no investigation was occurring before September 7. He simply stated that he was contacted by the probation officer on September 7, 2012. That Inv. Pelfrey may have been conducting surveillance at an earlier date does not make this statement false. The other pre-September 7 allegations that the Defendant complains of are Sgt. Brock listing what the informant told him that she did and saw on those dates. The Defendant's allegations simply do not demonstrate that the warrant affidavit contained false allegations, and a motion to suppress on that basis would not have been granted.

*Id.* at 200. Finally, with regard to Scott's argument about the alleged lack of a recording of the controlled purchase, the state court judge was correct that this argument "is belied by his [Scott's] attachments, namely, the letter from the prosecutor to defense counsel attached to his Appendix as Exhibit D which demonstrates that a recording did exist and was made available to counsel." *Id.* Thus, as the state court correctly concluded, "the Defendant's allegations of falsity are without merit, his counsel cannot be faulted for failing to file a motion to suppress based upon the alleged falsity of the affidavit. Counsel cannot be deemed ineffective for failing to file a meritless motion." *Id.*, citing *Lebrun v. State*, 135 So.3d 1040, 1054 (Fla. 2014) (citing *Johnson v. State*, 63 So.3d 730, 740 (Fla. 2001)).

**D.    Evidentiary hearing**

The undersigned finds that an evidentiary hearing is not warranted.    In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).    Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.*  Upon consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  28 U.S.C. § 2254 Rule 11(a).  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right.  § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84

(2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.    The clerk shall change the docket to reflect that Mark S. Inch has been substituted as the respondent.

And, it is respectfully RECOMMENDED:

1.    That Petitioner's petition under 28 U.S.C. § 2254 be DENIED, without an evidentiary hearing;

2.    That a certificate of appealability be DENIED; and

3.    That the clerk close this matter.

DONE AND ORDERED this 2nd day of July, 2019.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.